UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

BRUCE OSBORNE and ALLEN SNEED,                          Case Number:

               Plaintiffs,

       -v-                                       **COMPLAINT**

IOWA SPORTS MANAGEMENT, INC.,
and JON OSTROWSKI

             Defendants.
-------------------------------------------------------X

      Plaintiffs, BRUCE OSBORNE ("Mr. Osborne") and ALLEN SNEED ("Mr. Sneed") (together as "Plaintiffs") by and through their attorneys, THE LAW OFFICES OF WILLIAM CAFARO, as and for their Complaint against IOWA SPORTS MANAGEMENT, INC. (the "Company" or "Iowa Sports"), and JON OSTROWSKI ("Mr. Ostrowski") (together as "Defendants') alleges upon knowledge to themselves and their own actions and upon information and belief as to all other matters as follows:

### *NATURE OF CASE*

    1.    This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII"), Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. Section 1981 ("Section 1981"), the New York State Human Rights Law, New York Exec. Law § 290 et seq. ("NYSHRL"), the New York Labor Law § 190, *et seq.* ("NYLL"), the New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York, as amended, including The Local Civil Rights Restoration Act, effective October 3, 2005 as well as Local Laws 1, 34, 35, 36, 37, 38, and 40 of 2016 ("NYCHRL"), and other appropriate rules, regulations, statutes and ordinances.  Specifically, Plaintiffs bring claims for discrimination, retaliation and unlawful termination.

2.       Mr. Osborne (an African American male) and Mr. Sneed (an African American male) claim that Defendants have discriminated against them on the basis of race and paid them less than their Caucasian counterparts due to their race.  Plaintiffs contend, upon information and belief, that these discriminatory practices continue to the present.  Additionally, Mr. Sneed alleges that Defendants retaliated against him for complaining about their unlawful conduct, even though Defendants know that retaliation is expressly prohibited by multiple discrimination statutes.

## JURISDICTION AND VENUE

3.       Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343, insofar as it involves several statutes of the United States, specifically, Title VII and Section 1981.  Plaintiffs relies upon 28 U.S.C. §1367 to invoke supplemental jurisdiction with respect to the New York State and City claims which form another basis for recovery upon the same factual nexus, specifically Plaintiff's NYSHRL, NYLL, and NYCHRL claims.

5.       Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as all actions comprising the claims for relief occurred within this judicial district.

## ADMINISTRATIVE PROCEDURES

4.       Prior to filing this lawsuit, Plaintiffs filed separate charges of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") against Iowa Sports for their violations of Title VI.

5.       Plaintiffs, and each of them, received a Notice of Right to Sue from the EEOC.

6.    This Complaint is being filed within 90 days of the receipt of the Notice of Right to Sue.

7.    Plaintiffs served a copy of this complaint upon the New York City Commission on Human Rights and the Corporation Counsel of the City of New York in accordance with N.Y.C. Admin. Code § 8-502(c).

### *PARTIES*

8.    Mr. Osborne is a resident of the State of New York and resides in Kings County.

9.    Mr. Sneed is a resident of the State of New York and resides in Bronx County.

10.    At all times herein pertinent, Mr. Osborne, was an "employee" of the Defendants, and each of them, within the meaning of Title VII, Section 1981, the NYLL, the NYSHRL, and the NYCHRL.

11.    At all times herein pertinent, Mr. Sneed, was an "employee" of the Defendants, and each of them, within the meaning of Title VII, Section 1981, the NYLL, the NYSHRL, and the NYCHRL.

12.    At all times herein pertinent, Mr. Osborne was and is a "person" within the meaning of Title VII, Section 1981, the NYSHRL, and the NYCHRL.

13.     At all times herein pertinent, Mr. Sneed was and is a "person" within the meaning of Title VII, Section 1981, the NYSHRL, and the NYCHRL.

14.     At all times herein pertinent, Iowa Sports was and is a domestic business corporation created pursuant to the laws of the State of New York with a principal place of business located at  121 West 27th Street, Suite 1001, New York, NY 10001.

15.     At all times herein pertinent, Defendant Iowa Sports was an employer of Mr. Osborne within the meaning of Title VII, Section 1981, the NYLL, the NYSHRL, and the NYCHRL.

16.     At all times herein pertinent, Defendant Iowa Sports was an employer of Mr. Sneed within the meaning of Title VII, Section 1981, the NYLL, the NYSHRL, and the NYCHRL.

17.     At all times herein pertinent, Defendant Iowa Sports had fifteen (15) or more persons in its employ at all times relevant.

18.     At all times herein pertinent, Defendant Iowa Sports had four (4) or more persons in its employ at all times relevant.

19.     At all times herein pertinent, Defendant Ostrowski was a resident of the State of New York.

20.     At all times herein pertinent, Defendant Ostrowski as the Chief Operating Officer of Iowa Sports had the authority to hire, fire, discipline, supervise, and direct the Plaintiffs, and administer the terms, conditions and privileges of their employment.

21.     Defendant Ostrowski was and is an employer of Mr. Osborne within the meaning of Title VII, Section 1981, the NYLL, the NYSHRL, and the NYCHRL.

22.     Defendant Ostrowski was and is an employer of Mr. Sneed within the meaning of Title VII, Section 1981, the NYLL, the NYSHRL, and the NYCHRL.

23.     Upon information and belief, Defendant Ostrowski has, and at all times herein pertinent, had his actual place of business at 121 West 27th Street, Suite 1001, New York, NY 10001.

24.     As stated in more detail below, Defendant Ostrowski actually participated in the conducted giving rise to the claims of discrimination alleged herein and is liable as an aider and abettor of unlawful conduct.

## **BACKGROUND FACTS**

25.     Iowa Sports is a management company which designs, operates, and manages luxury residential amenities, health clubs, pools and spas.

26.     Upon information and belief, the corporate decisions regarding Plaintiffs' employment including, but not limited to, firing, paying, and administering the terms, conditions and privileges of him employment were made within the City of New York, State of New York.

27.     Plaintiffs are African American men.

28.     For the relevant time period, the Plaintiffs worked as general managers for various health clubs owned and operated by the Defendants.

29.     As general managers, Plaintiffs were responsible for managing, coordinating, and supervising all phases of operation including facility maintenance.

30.     General managers perform work of equal skill, effort and responsibility and have virtually identical duties.

31.     Upon information and belief, Defendants paid Caucasian general managers between approximately $60,000.00 and $70,000.00 per year.

32.     Defendants paid the Plaintiffs, who were general managers, an annualized rate between approximately $35,000.00 and $50,000.00 per year.

33.     Upon further information and belief, Defendants did not pay Caucasian managers on an hourly basis.  Rather, Defendants paid Caucasian managers on a salary basis.  This is beneficial as it allowed Caucasian managers to be paid more for working less.

34.     Moreover, as Defendants would not pay their hourly managers overtime compensation, Plaintiffs' annualized pay was far less than their Caucasian counterparts annualized salary.

35.     Throughout their employment with the Defendants, Plaintiffs were outstanding, dedicated, and hardworking employees, serving the Defendants faithfully in their positions.

36.     Defendants hired Mr. Osborne in October 2014 as the general manager of one of their health facilities located at the Helena, a high-rise residential building located in midtown Manhattan.

37.     Upon information and belief, the general manager of the Helena before Mr. Osborne was paid on a salary basis.

38.     Rather than hire Mr. Osborne on a salary basis, Defendants paid Mr. Osborne on an hourly basis causing him to earn less and work more than his Caucasian counterpart.

39.     The general manager of the Helena before Mr. Osborne was a Caucasian male.

40.    The previous general manager of the Helena was paid at a much higher annualized rate than Mr. Osborne even though they essentially had the same responsibilities.

41.    In an effort to further discriminate against Mr. Osborne, although they paid him less than his Caucasian counterparts, they required Mr. Osborne to work longer hours than his Caucasian counterparts.

42.    Although Iowa Sports had training opportunities for new hires, Defendants refused to train Mr. Osborne for his position or for the tasks he was required to do by the Defendants.

43.    Upon information and belief, Caucasian general managers were trained by the Defendants in their job duties.

44.    In 2015, Mr. Osborne was recommended by Iowa Sports Management's client to work at a new larger club called the Via, which is also located in midtown Manhattan.

45.    Defendants refused to hire Mr. Osborne for this job, even though he had received excellent reviews from Defendants' clients.  Rather, upon information and belief, Defendants hired a Caucasian general manager to manage the Via who did not have as much experience as Mr. Osborne.

46.    The Caucasian manager referred to in the previous paragraph was offered a much higher salary than Mr. Osborne.

47.     On or about November 5, 2018, Mr. Osborne received a message from the Defendants requiring him to meet them later that day.  At the meeting, Defendants explained to Mr. Osborne that the Defendants lost the contract where Mr. Osborne worked and that he was terminated effective the next day.

48.     Upon information and belief, upon losing the contract above, Defendants terminated minority managers and staff, and transitioned Caucasian employees to other clubs run by Iowa Sports management.

49.     Mr. Sneed was hired by the Defendants in March 2015 as an assistant manager of Corinthian Health Club.

50.     After the general manager left of the Corinthian Health Club left, Defendants refused to promote Mr. Sneed to the general manager position until the board of the Corinthian Health Club stated they preferred Mr. Sneed to any other candidate.

51.     Under pressure from the board at the Corinthian Health Club, Defendants promoted Mr. Sneed at a salary less than what the previous general manager was making, who was a Caucasian male.

52.     Once he was promoted, Defendants required Mr. Sneed to take on additional responsibilities beyond his job description.  These were responsibilities that his predecessor was

not given.  Moreover, Defendants required Mr. Sneed to work weekend hours and cover the duties of Caucasian managers at other New York City Health Clubs.

53.     Due to this excess workload, on average, Mr. Sneed was required to work 50-60 hours per week, while his Caucasian counterparts were only required to work approximately 40 hours per week.

54.     Despite working these hours and performing these additional duties, Mr. Sneed was paid substantially less than his Caucasian counterparts.

55.     In September 2017, Iowa Sports Management lost its contract with the Corinthian Health Club and was transferred to the Via.

56.     At the Via, Mr. Sneed replaced a Caucasian manager.  The Via location was larger than the Corinthian Health Club location and required the supervision of other staff, including porters, lifeguards and instructors.  Despite having seniority over the previous Caucasian manager at the Via location, Mr. Sneed was paid substantially less than this manager for doing the same work.

57.     In November 2018, Mr. Sneed was transferred to the Monterey and was given a pay cut.  There, again, he was paid substantially less than the previous Caucasian managers moreover, they moved him from a salary basis to an hourly basis and required him to work a non-

manager schedule.   Upon information and belief, Defendants did not subject any Caucasian managers to this schedule.

58.     While at the Monterey, Mr. Sneed learned that Iowa Sports Management has a practice of paying Caucasian Managers much more than their minority counter parts for doing substantially similar work.

59.     Plaintiffs were terminated due to their race.

60.     Plaintiffs were paid less than similarly situated Caucasian employees due to their race.

61.     Defendants treated members outside of Plaintiffs' race more favorably by not subjecting them to the discriminatory conduct outlined above.

62.     Mr. Sneed was terminated from his employment for reporting Defendants' discriminatory conduct.

63.     Defendants have treated Plaintiffs unequally, and less well than other employees because of their race, in violation of Section 1981, Title VII, and NYSHRL.

64.     Employees outside Plaintiffs' protected classes have and continue to be treated more favorably than Plaintiff.

65.     On February 21, 2019, Mr. Sneed filed a charge of illegal race discrimination with the EEOC.  This EEOC Charge was acknowledged by the EEOC in a letter dated March 6, 2019 giving Mr. Sneed the EEOC Charge Number of 520-2019-02085.

66.     On or about April 26, 2019, Mr. Sneed spoke to the Defendants' Human Resources Director, Stacey Ostrowski to complain that he was being "singled out" since he filed his EEOC Charge.

67.     Since the filing of his EEOC charge Defendants engaged in illegal retaliation. Specifically, and only by way example:

a)  Defendants have failed to hire key positions which were necessary for Mr. Sneed to accomplish his job effectively, this includes, but is not limited to, an assistant manager, receptionists, lifeguards, and playroom supervisors;

b)  After Mr. Sneed tried to fill the positions by hiring qualified employees, Defendants refused to approve these new hires until they were vetted by upper management even those employees who had been recommended by upper management for the position;

c)  Defendants erroneously blamed Mr. Sneed for not properly training and/or coaching staff members;

d)  Defendants Cut the hours of necessary staff in order to make Mr. Sneed's work performance appear inadequate;

e)  Upon information and belief, Defendants failed to acknowledge clients when they sent positive feedback about Mr. Sneed;

f)  Defendants delayed the shipment and/or order of necessary supplies;

g)  Defendants scheduled a meeting with Mr. Sneed during his previously approved vacation;

h)  Defendants Scheduled a meeting with Mr. Sneed during previously approved sick time;

i) Defendants increased scrutiny over Mr. Sneed by making multiple trips to his work location and asking staff members about his management;

j) Defendants accused Mr. Sneed of failing to inform management when he would not be at work, even though he was only absent during previously approved vacation time and sick leave;

k) Defendants gave Mr. Sneed a stern verbal working concerning baseless pretextual issues at a meeting which lasted over two hours;

l) Defendants failed to timely pay Mr. Sneed for work performed by him;

m) Defendants Terminated Mr. Sneed for job abandonment even though he did not abandon his job.

68.    Defendants terminated Mr. Sneed on July 16, 2019 for job abandonment for not working on July 8, 11, 13 and 15.  However the reason given by Defendants was pretextual as Mr. Sneed had received permission from his supervisor for those days off.

## FIRST CLAIM FOR RELEF AGAINST DEFENDANTS
### Race Discrimination Under Title VII

69.    The Plaintiffs hereby incorporate all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

70.    Title VII of the Civil Rights Act of 1964 provides that

It shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

71.    As described above, Defendants have discriminated against the Plaintiffs due to their race in violation of Title VII of the Civil Rights Act of 1964.

72.     As a proximate result of Defendants' retaliation, Plaintiffs have suffered compensatory and other consequential damages and expenses.

73.     As a further proximate result of Defendants' actions, Plaintiffs suffered, and continue to suffer, severe and lasting embarrassment, humiliation, mental and physical anguish, and damage to her reputation.

74.     Defendants' conduct was perpetrated with a conscious disregard of Plaintiffs' rights.

### SECOND CLAIM FOR RELEF AGAINST DEFENDANTS
#### Retaliation Under Title VII

75.     Plaintiffs repeat, reiterate and reassert all allegations contained in the preceding paragraphs of this complaint as if fully set forth herein at length.

76.     Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful to "discriminat[e] against any of his employees… because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter"

77.     Plaintiffs reported and complained of Defendants discriminatory conduct.

78.     Defendants retaliated against the Plaintiffs for reporting Defendants' discriminatory conduct.

79.     Based on the foregoing, Defendants retaliated against the Plaintiffs for engaging in protected activity.

80.     As a proximate result of Defendants' retaliation, Plaintiffs have suffered compensatory and other consequential damages and expenses.

14

81.    As a further proximate result of Defendants actions, Plaintiffs suffered, and continue to suffer, severe and lasting embarrassment, humiliation, mental and physical anguish, and damage to her reputation.

82.    Defendants' conduct was perpetrated with a conscious disregard of Plaintiff's rights.

### THIRD CLAIM FOR RELEF AGAINST DEFENDANTS
#### Race Discrimination Under Section 1981

83.    Plaintiffs hereby incorporate all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

84.    Defendants discriminated against Plaintiffs on the basis of their race in violation of Section 1981 by denying them the same terms and conditions available to employees outside of his race.

85.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Section 1981, Plaintiffs have suffered and continues to suffer substantial losses, including the loss of past earnings, the loss of future earnings, and the loss of other employment benefits in an amount to be proved at trial.

86.    As a direct and proximate result of Defendants' actions, Plaintiffs suffered and continues to suffer severe and lasting embarrassment, humiliation, mental and physical anguish and other incidental consequential damages and expenses in an amount to be proved at trial.

87.    Defendants have acted with malice or reckless indifference to Plaintiffs.

## FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### Retaliation Under Section 1981

88.     Plaintiffs hereby incorporate all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

89.     By the actions described above, among others, Defendants retaliated against Plaintiffs for making protected complaints regarding discrimination on the basis of race.

90.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Section 1981, Plaintiffs have suffered and continue to suffer substantial losses, including the loss of past earnings, the loss of future earnings, and the loss of other employment benefits in an amount to be proved at trial.

91.     As a direct and proximate result of Defendants' actions, Plaintiffs suffered and continue to suffer severe and lasting embarrassment, humiliation, mental and physical anguish and other incidental consequential damages and expenses in an amount to be proved at trial.

92.     Defendants have acted with malice or reckless indifference to the Plaintiff.

## FIFTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### Race Discrimination under the NYSHRL

93.     Plaintiffs hereby incorporates all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

94.     The New York State Human Rights Law Provides that it shall be unlawful discriminatory practice:

> For an employer… because of an individual's age, race, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex, disability, predisposing genetic characteristics, familial status, or marital status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

16

95.     Defendants discriminated against Plaintiffs on the basis of their race in violation of NYSHRL.

96.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Section NYSHRL, Plaintiffs have suffered and continues to suffer substantial losses, including the loss of past earnings, the loss of future earnings, and the loss of other employment benefits in an amount to be proved at trial.

97.     As a direct and proximate result of Defendants' actions, Plaintiffs suffered and continue to suffer severe and lasting embarrassment, humiliation, mental and physical anguish and other incidental consequential damages and expenses in an amount to be proved at trial.

98.     Defendants have acted with malice or reckless indifference to the Plaintiff.

### SIXTH CLAIM FOR RELEF AGAINST DEFENDANTS
*Violations of the New York Labor Law Equal Pay Law*

99.     Plaintiffs hereby incorporate all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

100.     During the period of the employment of Plaintiffs, Defendants were subject to the provisions of the New York Labor Law § 194.

101.     During the employment of Plaintiffs, Defendants required Plaintiffs to perform the same or substantially the same job position as employees outside of their protected class, requiring equal skill, effort and responsibility under similar working conditions at the same establishment, and paid Plaintiffs at a rate, including salary and bonus, less than such employees outside of their protected class.

102.    The differential rate of pay was not part of or occasioned by a seniority system, merit system, a system based on the quantity or quality of production, or upon a bona fide factor other tan race, such as education, training, or experience.

103.    Defendants engaged in patters, practices, and/or policies of employment which willfully, discriminated against Plaintiffs on the basis of race by paying Plaintiffs a lesser rate of pay than that paid to those outside of their protected class, performing the same or substantially similar job duties which require equal skill, effort, and responsibility, and under the same working conditions and at the same establishment.

104.    By the actions described above, among others, Defendants have violated the New York Labor Law.

105.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the New York Labor Law, Plaintiffs have suffered and continue to suffer, harm for which they are entitled to an award of monetary damages and other relief.

106.    Plaintiffs are further entitled to liquidated damages, reasonable costs and attorneys' fees.

### SEVENTH CLAIM FOR RELEF AGAINST DEFENDANTS
#### Retaliation under the NYSHRL

107.    Plaintiffs hereby incorporate all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

108.    By the actions described above, among others, Defendants retaliated against Plaintiffs for making protected complaints regarding discrimination on the basis of race.

109.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of NYSHRL, Plaintiffs have suffered and continue to suffer substantial losses, including

the loss of past earnings, the loss of future earnings, and the loss of other employment benefits in an amount to be proved at trial.

110.   As a direct and proximate result of Defendants' actions, Plaintiffs suffered and continue to suffer severe and lasting embarrassment, humiliation, mental and physical anguish and other incidental consequential damages and expenses in an amount to be proved at trial.

111.   Defendants have acted with malice or reckless indifference to the Plaintiff.

## EIGHTH CLAIM FOR RELEF AGAINST DEFENDANTS
### Aiding and Abetting Under the NYSHRL

112.   Plaintiffs repeat, reiterate and reassert all allegations contained in the preceding paragraphs of this complaint as if fully set forth herein at length.

113.   The New York State Human Rights Law provides that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

114.   Defendants violated the section cited herein by aiding, abetting, inciting, compelling, and coercing the above discriminatory and unlawful conduct.

## NINTH CLAIM FOR RELEF AGAINST DEFENDANTS
### Discrimination Under the NYCHRL

115.   The Plaintiffs hereby incorporate all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

116.   The New York City Human Rights Law provides it shall be unlawful discriminatory practice:

> For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual orientation, uniformed service or alienage or

19

citizenship status of any person (1) To represent that any employment or position is not available when in fact it is available; (2) To refuse to hire or employ or to bar or to discharge from employment such person; or (3) To discriminate against such person in compensation or in terms, conditions or privileges of employment.

117.    Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8 §8-107(l)(a) by discriminating against Plaintiffs based upon their race.

118.    As a result of Defendants' conduct alleged in this complaint, Plaintiff has suffered and continues to suffer harm, including, but not limited to, lost earnings, benefits, employment opportunities, other financial loss and non-economic damages.

119.    By reason of Defendants' discrimination, Plaintiff is entitled to all remedies available for violations of NYCHRL.

## TENTH CLAIM FOR RELEF AGAINST DEFENDANTS
### Retaliation Under NYCHRL

120.    The Plaintiff hereby incorporates all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

121.    The Administrative Code of the City of New York, states that it shall be unlawful discriminatory practice for any employer to

retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter, (iv) assisted the commission or the corporation counsel in an investigation commenced pursuant to this title, or (v) provided any information to the commission pursuant to the terms of a conciliation agreement made pursuant to section 8-115 of this chapter.

122.    By the actions described above, among others, Defendants retaliated against Plaintiffs for making protected complaints regarding discrimination on the basis of race.

123.    As a proximate result of Defendants' retaliation, Plaintiff has suffered compensatory and other consequential damages and expenses.

124.    As a further proximate result of Defendants actions, Plaintiff suffered, and continues to suffer severe and lasting embarrassment, humiliation, mental and physical anguish, and damage to her reputation.

125.    Defendants' conduct was perpetrated with a conscious disregard of Plaintiffs' rights.

### *ELEVENTH CLAIM FOR RELEF AGAINST DEFENDANTS*
#### *Aiding and Abetting Under NYCHRL*

126.    Plaintiff repeats, reiterates and reasserts all allegations contained in the preceding paragraphs of this complaint as if fully set forth herein at length.

127.    The New York City Administrative Code Title 8 §8-107(6) provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."

128.    Defendant Timmons violated the section cited herein by aiding, abetting, inciting, compelling, and coercing the above discriminatory and unlawful conduct.

### *TWELFTH CLAIM FOR RELEF AGAINST DEFENDANTS*
#### *Employer Liability Under NYCHRL*

129.    Plaintiff repeats, reiterates and reasserts all allegations contained in the preceding paragraphs of this complaint as if fully set forth herein at length.

130.    The New York City Administrative Code Title 8 §8-107(13) provides"

a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

> (1) the employee or agent exercised managerial or supervisory responsibility; or

> (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

> (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

131.    Due to the above provision, the entity defendant is liable under the NYCHRL.

### ***JURY DEMAND***

132.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the Plaintiff hereby demands trial by jury with respect to all issues so triable.

### ***PRAYER FOR RELIEF***

**WHEREFORE**, Plaintiffs request a judgment against the Defendants:

a.  Declaring that the Defendants have violated the aforementioned statutes;

b.  An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

c. An order restraining Defendants from any retaliation against any individual, including Plaintiffs, for participating in this lawsuit in any form;

d. Determine the damages sustained by Plaintiffs as a result of Defendants' violation of the NYEPL and award those damages against Defendants and in favor of Plaintiffs;

e. Awarding liquidated damages equal to the amount of NYEPL damages because Defendants' violations were willful and/or without a good faith basis;

f. Awarding future income to Plaintiff in an amount to be proven at trial, representing all loss of future earnings, including reasonable and expected increases, loss of retirement income, diminution in Plaintiff's prospective social security benefits which will be computed over the Plaintiff's prospective statistical life expectancy, and all other benefits the Plaintiff would have expected to earn during the Plaintiff's lifetime had it not been for Defendants' unlawful discrimination;

g. Awarding damages to the Plaintiff to make the Plaintiff whole for any economic losses suffered as a result of such unlawful employment practices;

h. Awarding statutory penalties;

i. Awarding compensatory damages for mental and emotional distress, pain and suffering in an amount to be proven at trial;

j. Awarding punitive damages;

k. Awarding attorneys' fees and costs and expenses incurred in the prosecution of the action;

l. Awarding pre and post-judgment interest as provided by law;

m. Awarding such other and further relief as available under the statues;

n.  Awarding such other and further relief as the Court may deem equitable, just and proper

to remedy the Defendants' unlawful employment practices.

Dated:  New York, New York
        October 14, 2019

                                    Respectfully submitted,
                                    LAW OFFICES OF WILLIAM CAFARO

                                    _____
                                    By: Amit Kumar, Esq. (AK 0822)
                                    *Attorneys for Plaintiff*
                                    108 West 39th Street, Ste. 602
                                    New York, New York 10018
                                    (212) 583-7400
                                    AKumar@CafaroEsq.com